UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMIE H. BASSEL DC PC D/B/A NEW YORK CITY CHIROPRACTIC & JAMIE BASSEL, D.C., P.C.<br><br>          Plaintiff,<br><br>vs.<br><br>AETNA HEALTH INSURANCE COMPANY OF NEW YORK; ALLIANCEBERNSTEIN L.P.; RADIUS HEALTH INC., JOHNSON & JOHNSON; STATE OF NEW JERSEY HEALTH BENEFITS; SOVEREIGN USA INC., LULULEMON USA INC; CITYGROUP; KPMG; TKEDA PHARMACEUTICALS U.S.A.; THE BLACKSTONE GROUP; FASHION ISTITUTE OF TECHNOLOGY; TRINET GROUP INC., MARKET RESOURCES PARTNERS; WPP GROUP INC., RENT THE RUNWAY; GALAXOSMITHKLINE LLC; MTN NEW YORK TRANSIT, DEUTSCHE BANK.<br><br>          Defendant | CIVIL ACTION NO.:<br><br>**COMPLAINT** |

Plaintiffs, New York City Chiropractic and Jamie Bassel, D.C., P.C., by and through their attorneys, J. Iandolo Law, PC, as and for their Complaint against Defendant Aetna Health Insurance Company ("Aetna") allege as follows:

## **INTRODUCTION**

1. Since, about, January 1, 2018 Plaintiff New York City Chiropractic via its managing member Jamie Bassel (hereinafter collectively referred to as "Plaintiffs") have operated a chiropractic facility, and provided and continue to provide medically necessary and

appropriate chiropractic services to, among others, patients who were, at the time service was rendered, either employees, or employees' spouses, dependents, or children covered under employer-sponsored healthcare benefit plans administered by Aetna.

2. That Plaintiff is not in Aetna's network, as such prior to Plaintiff's preforming any treatment deemed "medically necessary," as all patients sign a valid assignment of benefits form, whereby, Plaintiffs' are placed in the position to legally collect any sums due to the patients.

3. In the last few years, Plaintiff submitted billing to Aetna – which they deemed incorrect- at which point caused Plaintiff's submissions for payments to be denied, in whole.

4. Since 2018, Aetna has denied essentially all claims submitted from Plaintiff's forcing Plaintiff to commence this action.


**BACKGROUND**

**DEFENDANT'S REPEATED REGULATORY
VIOLATIONS IN FAILING TO DECEIDE CLAIMS, REQUEST FOR
INFORMATION, OR ASSERT DEFENSES WITHIN 30 DAYS**

5. Aetna has a disturbing history of engaging in unlawful, procedurally flawed, and abusive claims practices.

6. This conduct has been addressed and punished by the New York State Department of Insurance on multiple occasions, yet Defendant's conduct has continued unabated.

7. On or about August 19, 2010, Aetna entered into a stipulation with New York State Department of Insurance whereby it admitted numerous regulatory violations, including but not limited to, failing to decide claims or request information within 30 days, as required by both New York law and the ERISA regulations, and for sending out

Explanation of Benefits Forms that failed to inform the claimants of their right to appeal. Defendants were punished with a fine of Eight Hundred and Fifty Thousand ($850,000) Dollars for their persistent unlawful conduct. The unlawful conduct occurred between 2001 and 2005.

8.  Aetna had previously been cited by the Department of Insurance for unlawful conduct between 1994 and 2001.  On June 13, 2002, the Department of Insurance cited Aetna for serious inadequacies in their claims processing system." Aetna was order to reassess claims dating back a number of years and was required to file a remedial plan.

9.  Aetna's repeated conduct is evidence of bad faith and culpable conduct which supports an award of attorney's fees to Plaintiff's under ERISA.

*10.* At all relevant times, Aetna was and is the Plan Administrator and/or Claims Adjustor, for various ERISA- governed group health benefit plans. (The "Aetna Plans")

### *Parties*

11.  Plaintiff Jamie H. Bassel D.C., P.C. D/B/A New York City Chiropractic has been in operation since, August 2002, and has an is currently conducting business at 425 Madison Avenue, 11th Floor New York NY 10017.

12. Defendant Aetna has an address of 151 Farmington Avenue, Hartford CT 06156.

13. Defendant, Alliance Bernstein L.P is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at: 1345 6th Avenue, New York NY 10105

14. Defendant, Radius Health; is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at 950 Winter Street, Waltham, MA 02451.

15. Defendant, Johnson & Johnson, is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at 307 College Rd. Princeton NJ 08540.

16. Defendant, State of NJ Health Benefits, is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at State of New Jersey Department of Corrections, P.O. Box 863 Trenton NJ 08625.

17. Defendant, Lululemon USA Inc, is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at 1818 Cornwall Avenue, Vancouver, BC V6J 1C7 Canada.

18. Defendant, Citigroup, is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at 388 Greenwich Street, New York, NY 10001

19. Defendant, KPMG, is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at 345 Park Avenue, New York, NY 10065.

20. Defendant, TKEDA Pharmaceuticals U.S.A., is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at: 95 Hayden Avenue, Lexington MA 02421.

21. Defendant, The Blackstone Group, is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at 345 Park Avenue, New York, NY 10065.

22. Defendant, Fashion Institute of Technology, is a plan administrator for AETNA, who has failed their obligations as a plan administrator and is located at 227 West 27th Street. New York, NY 10001.

23. Defendant, Market Resources Partners, is a plan administrator for AETNA, who has failed their obligations as a plan administrator and is located at 1818 Market Street 37th Floor, Philadelphia PA 19103.

24. Defendant, WPP Group Inc., is a plan administrator for AETNA, who has failed their obligations as a plan administrator and is located at 175 Greenwich Street, New York, NY 10007

25. Defendant, Trinet Group Inc, is a plan administrator for AETNA, who has failed their obligations as a plan administrator and is located at 199 Water Street, #2800 New York, NY 10038.

26. Defendant, Rent The Runway, is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at 345 Hudson St. New York, NY 10014

27. Defendant, Galaxosmithkline LLC, is a plan administrator for AETNA, who has failed their obligations as a plan administrator and is located at 5 Crescent Dr. Philadelphia, PA 19112.

28. Defendant, MTA New York Transit, is a plan administrator for AETNA, whom has failed their obligations as a plan administrator and is located at 2 Broadway, New York, NY 10004.

29. Defendant, Deutsche Bank, is a plan administrator for AETNA, who has failed their obligations as a plan administrator and is located at 60 Wall Street, New York, NY 10005.

30. At all relevant tomes, Aetna was and is the Plan Administrator and/or Claims Administrator, for various ERISA-governed group health benefits plans (the "Aetna Plains").

31. The Aetna Plans are Employee Welfare Benefit Plans governed by ERISA and the Regulations promulgated thereunder by the United States Department of Labor. Upon information and belief, these Aetna Plans are substantially similar to or identical in their salient features, relevant terms, benefits and conditions, to the Aetna Plan and policy.

32. As a Plan Administrator, and/or Claims Administrator for the ERISA governed Aetna Plans, Aetna is a Plan "fiduciary" as that term is defined in 29 U.S.C. §§1002(21). As a Plan fiduciary, Aetna owes a duty of undivided loyalty to both Aetna Plan participants and their beneficiaries, to deal with them u the utmost good faith and to place the interests of plan participates and beneficiaries above its own interest.

33. 29 U.S.C. §1002(8) defines ERISA "beneficiary" as: "a person designated by a participant, or by the terms of an employee benefit plan, whom is or may be entitled to a benefit thereunder."

34. Plaintiffs have provided and continue to provide medically necessary and appropriate chiropractic and medical services to patients who were, at the time services were rendered, either employees, or employers' spouses, dependents, or children covered under the Aetna Plans. (the "Aetna Plan Patients").

35. Plaintiffs are ERISA "beneficiaries" pursuant to 29 U.S.C §1002(8) because they have rights to receive benefits pursuant to the terms of the applicable ERISA-governed Aetna Plans and/or have also been designated to receive benefits by participants under the applicable Aetna Plans, through a valid assignment of benefits.

36. Plaintiffs are ERISA beneficiaries, pursuant to 29 U.S.C. §1002(8), concerning the Aetna Pans and the denied claims of the Aetna Plan Patients listed on the spreadsheet annexed hereto as Exhibit "A"

37. To the extent that any patients are covered under Aetna Plans where the U.S. Government, or State, or any subdivision, department or agency of either, is the employer [such as Federal Employee Health Benefit Act ("FEHBA") claims, applicable to certain federal employees], pursuant to §2719 of the Patient Protection and Affordable Care Act, 42 U.S.C §300gg-19(a)(2)(A), all rights under the ERISA claims regulations apply to all of those health plans, whether they are group insurance contracts or self-insured health plans. Under §2719, these plans are deemed to incorporate the ERISA claims regulations by reference.

## **AETNA'S FALSE AND DEFECTIVE EXPLAINTION OF BENEFITS FORMS**

38. ERISA Regulations 503-1 (29 C.F.R. §2560.503-1) (the "Regulation") sets forth the minimum requirements imposed upon Defendants regarding procedures pertaining to claims for benefits filed by participants, beneficiaries and/or their representatives.

39. The regulation requires "the plan administrator [to] notify the claimant … of the plan's adverse benefit determination within … 30 days." Or within a short statutory extension

thereof. ERISA regulation 29 C.F.C. §2560.503.1(f)(2)(iii)(B) sets forth the legally

required timing of the notice of any Adverse Benefit Determination:

> [T]he plan administrator shall notify claimant, in accordance with paragraph (g) of this section, of the plan's adverse determination within a reasonable period of time, but not later than 30 das after receipt of the claim.  This period may be extended one time by the plan for up to 15 days, provided that the plan administrator both determines that such extension is necessary due to matters beyond the control of the plan and notifies the claimant, prior to the expiration of the initial 30-day period, of the circumstances requiring the extension of time and the date by which the pam expects to render a decision. If such an extension is necessary due to a failure of the claimant to submit the information necessary to decide the claim, the notice of **extension shall specifically describe what the required information**…

(Emphasis added).

40. Under the terms and conditions of the Aetna Plans, Aetna has operated in the role of,

and has performed the duties, obligations and responsibilities of the Plan Administrator

and Claims Administrator.

41. The Regulation defines "Adverse Benefit Determination" as:

> [A] denial, reduction, or termination of or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial reduction, or termination, r failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item of service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary.

29 C.R.F. §2560.503-1(m)(4)

42. The notice of Adverse Benefit Determination is typically provided through Explanation

of Benefits Forms ("EOBs").

43. As required by the Regulation, for the claims contained on Exhibit C, EOBs were sent by Aetna to Plaintiffs. Upon information and belief, all of the Aetna EOBs are substantially similar in content and explanation, and all are legally defective for the reasons that follows.

44. Pursuant to 29 C.F.R. §2560.503.1(f)(2)(iii)(B), by notifying the claimants of the Adverse Benefits Determination, Aetna was operating in the capacity of "Plan Administrator, as that term relates to claim determinations.

45. ERISA Regulation 29 C.F.R. §2560.503-1(g) sets forth the legally required content of any Adverse Benefit Determination.

That section provides, in pertinent part: The notification shall set forth, in a manner calculated to be understood by the claimant –

(i) The specific reason or reasons for the adverse determination

(ii)     Reference to the specific plan provisions which the determination is based

(iii)     A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary

(iv)     A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefits determination on review:

(v)     In the case of an adverse benefit determination by a group health plan or a plan providing disability benefit,

a.   If an internal rule, guideline, protocol, or other similar criteria was relied upon in making the adverse determination, either the specific rule, guideline, protocol or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse

determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge t the claimant upon request; or

b. If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit wither an explanation of the scientific or clinical judgement for the determination, applying the terms of the plan to the claimant's medical circumstances, or statement that such explanation will be provided free of charge upon request.

## The BASSEL EOBs

46. Most of the EOBs to Bassel contained the following statement accompanying Aetna's refusal to pay the claims:

> **These are non-covered services because this is not deemed a "medical necessity" by the payor.**

47. These EOBs, upon information and belief, contained false statements, violated the terms of the terms of the applicable ERISA-governed Aetna Plans, violated the governing ERISA Regulation in many respects, and violated the fiduciary obligations of Aetna in its capacity as plan or claims administrator as delineated in 29 U.S.C. §1104(a).

48. These EOBs constituted Adverse Benefit Determinations, as that term is defined in 29 C.F.R. §2560.503-1(m)(4). As such, they violated 29 C.F.R. §2560.503-1 because they:

a. Contained false statements, because Aetna had already been provided with all of the requested documentation and information and all of the relevant documents and information concerning each and every claim on Exhibit C;

b. Violated the 30-day rule, together with any applicable extension thereto, contained in 29 C.F.R. §2560.503-1(f)(2)(iii)(B), because the records were not requested in a timely fashion, nor was extension of time requested, as provided in the Regulation;

c.   Violated 29 C.F.R. §2560-503-(g)(1)(i) because they failed to identify specific reasons for the adverse determination, and any reasons that they did identify were false;

d.   Violated 29 C.F.R. 2560.503-1(g)(1)(ii) because they filed to reference the specific plan provisions on which the determinations were based;

e.   Violated 29 C.F.R. §2560.503-1(g)(1)(iv) because they failed to provide a description of the plan's review procedures, including the ERISA right to bring a civil action under Section 502(a)

f.   To the extent that any Adverse Benefit Determination was based on an internal rule, guideline, protocol, or similar criterion, the EOBs violated 29 C.F.R. §2560.503-1(g)(1)(v)(A) because they failed to identify any specific internal rule guideline or other similar criterion [that] was relied upon in making the adverse determination, or advise that a copy of such internal rule, guideline, protocol, or other criterion will be provided free of change to the claimant upon request.

g.   To the extent that these EOBs can be construed as denials for alleged lack of medical necessity, they violated 29 C.F.R. §2560-503.1(g)(1)(v)(B), which requires a plan administrator or claims administrator to notify the Plan Participant and/or their beneficiary, in a manner calculated to be understood by the claimant," "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimants' medical circumstances,: or advised that "such an explanation [of the scientific or clinical judgment for the determination] will be provided upon request.

h.   Violated 29 C.F.R. §2560.503-1(h) because they failed to advise the claimant that they were entitled to be "provided, upon request and free of charge … all documents, records, and other information relevant to the claimant's claim for benefits …;" and

i.   Violated 29 C.F.R. §2560-503.1(h) (3)(i) because they failed to advise the Plaintiffs that they had one hundred and eights days following receipt of the notification of an Adverse Benefit Determination to appeal the decision.

49. Many of the EOBs forwarded to Bassel contained the following statements accompanying Aetna's refusal to pay the claims:

    a. "Information requested from the Billing/Rendering Provider was not provided or not provided timely or was insufficient/incomplete. At least one Remark Code must be provided (may be comprised of either the NCPDP Reject Reason Code, or Remittance Advice Remark Code that is not an ALERT.)"

50. These EOBs, upon information and belief, contained false statements, violated the terms of the applicable ERISA Aetna Plans, violated the governing ERISA Regulation in many respects, and violated the fiduciary obligations of Aetna in its capacity as plan or claims administrator, as delineated in 29 U.S.C. §1104(a).

51. These EOBs constituted Adverse Benefits Determinations, as that term is defined in 29 C.F.R. §2560.503-1(m)(4). As such, they violated 29 C.F.R. 2560.503-1 because they:

    a. Violated 29 C.F.R. §2560.503-1(g)(1)(iv) because they failed to provide a description of the plans review procedures, including the ERISA right to bring a civil action under 502(a);

    b. Violated 29 C.F.R. §2560.503-1(h)because they failed to advise the claimant that they were entitled to be "provided upon request ad free of charge … all documents, records and other information relevant to the claimants claim for benefits…; and

    c. Violated 29 C.F.R. §2560.503-1(h)(3)(i) because the falsely advised the claimant that they had sixty days to appeal, failing to state that there was an applicable time to appeal or directing the claimants attention to the "secure member website" to find the appeal procedure.

52. A large portion of the EOBs forwarded to New York City Chiropractic contained the following statement accompanying Aetna's refusal to pay the claims:

We are conducting a review of services rendered to the above named patient(s). We are writing to request the medical records for the time period indicated.

This patient was a member/insured of ours during the dates of service above. We are permitted to obtain these records without obtaining an additional authorization from the member/insured, because you and we are covered entitles as defined by HIPPA. Specifically, 45 CFR 164.502(a)(a) allows such disclosures for "treatment, payment or health care operations".

53. These EOBs, upon information and belief, contained false statements, violated the terms of the applicable ERISA-governed Aetna Plans, violated the governing ERISA regulations in many respects, violated fiduciary obligations of Aetna in its capacity as plan or claims administrator, as delineated in 29 U.S.C. § 1104(a).

54. To the extent that these EOBs request, or could be construed as requesting additional information and/or supporting medical records to complete the processing f the claims (as opposed to denials), the EOBs violated C.F.R. §2560.503-1(f)(2)(iii)(B) because they:

   a. Contained false statements, because Aetna had already been provided with all of the requested documentation and information and all relevant documents and information concerning each and every claim on Exhibit C, (however, per said request information was sent again).

55. To the Extent that these EOBs constituted Adverse Benefits Determinations, they Violated 29 C.F.R. §2560-503-1 because they:

   a. Contained false statements, because Aetna had already been provided with all of the requested documentation and information and all relevant documents and information concerning each and every claim on Exhibit C, (however, per said request information was sent again).

   b. Violated the 30-day rule, together with any applicable extension thereto, contained in  29 C.F.R. §2560-503-1(f)(2)(iii)(B), because the records were not requested in a timely fashion, or was an extension of time requested, as provided by the regulation;

c.   Violated 29 C.F.R. §2560-503-1(g)(1)(i) because they failed to identify the specific reasons for the adverse determination;

d.   Violated 29 C.F.R. §2560-503-1(g)(1)(ii) because they failed to reference the specific plan provision on which the determination was based;

e.   Violated 29 C.F.R. §2560-503-1(g)(1)(iii) because they failed to provide "[a] description of any additional material information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

f.   Violated 29 C.F.R. §2560-503-1(g)(1)(iv) because they failed to provide a description of the plan's review procedures, including the ERISA right to bring a civil action under Section 502(a);

g.   To the extent that any Adverse Benefit Determination was based on an internal rule, guideline protocol, or other similar criterion, the EOBs violated 29 C.F.R. §2560-503-1(g)(1)(v)(A) because they failed to identify any specific "internal rule, guideline, protocol, r similar criterion [that] was relied upon in making the adverse determination,' or advise "that a copy of such internal rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

h.   To the extent that these EOBs can be construed as denials for alleged lack of medical necessity, they violated  29 C.F.R. §2560-503-1(g)(1)(v)(B), which requires a plan administrator to notify the Plan Participant and/or their beneficiary, "in a manner calculated to be understood by the claimant," "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances," or advising that "such an explanation [of the scientific or clinical judgment for the determination] will be provided upon request;"

i.   Violated 29 C.F.R. §2560-503-1(h) because they failed to advise the claimant that they were entitled to be "provided, upon request and free of charge …all documents, records and other information relevant to. The claimant's claim for benefits …;" and

j.   Violated 29 C.F.R. §2560-503-1(h) (3)(i) because they failed to advise the Plaintiffs that they had one hundred and eighty (180) days following receipt of the notification of an Adverse Benefit Determination to appeal the decision.

56. Many of the EOBs forwarded to New York Chiropractic contained the following statement accompanying Aetna's Refusal to pay the claims:

   a. [T]his clam/line has been denied. Processed according to plan provisions (plan refers to provisions that exist between the Health Plan and the Consumer or Patient).

57. These EOBs, upon information and belief, contained false statements, violated terms of the applicable ERSA-governed Aetna Plans, violated the governing ERISA Regulations in many respects, and violated the fiduciary obligations of Aetna in capacity as plans or claims administrator, as delineated in 29 U.S.C. §1104(a).

58. To the extent that these EOBs constituted Adverse Benefit Determination, they violated 29 C.F.R. §2560-503-1 because they:

   a. Contained false statements, because Aetna had already been provided with all requested documents and information and all relevant documents and information concerning each and every claim on Exhibit C, and did not request additional information and Aetna had at times found the same patients eligible for the same services and procedures on other occasions, and had found other patients under the same plan eligible for the same services and procedures in the past, and had routinely and customarily paid for these services and procedures under the plans in question in the past;

   b. Violated the 30-day rile, together with any applicable extension thereto, contained in 29 C.F.R. §2560-503-1(f)(2)(iii)(B), because the records were not requested in a timely fashion, nor was an extension of time requested, as provided for in the Regulation.

   c. Violated 29 C.F.R. §2560-503-1(g)(1)(i) because they failed to identify the specific reasons for the adverse determination.

   d. Violated 29 C.F.R. §2560-503-1(g)(1)(ii) because they failed to reference the specific plan provisions on which the determinations were based.

   e. Violated 29 C.F.R. §2560-503-1(g)(1)(iii) because they failed to provide "[a] description of any additional material or information

necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;"

f. Violated 29 C.F.R. §2560-503-1(g)(1)(iv) because they failed to provide a description of the plan's review procedures, including the ERISA right to bring a civil action under Section 502(a);

g. To the extent that any Adverse Benefit Determination was based on an internal rule, guideline, protocol or other similar criterion, the EOBs violated 29 C.F.R. §2560-503-1(g)(1)(v)(A) because they failed to identify any specific internal rule guideline, protocol or other similar criterion [that] was relied upon in making the adverse determination," or advise "that a copy of such internal rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

h. To the extent that these EOBs can be construed as denials for an alleged lack of medical necessity they violated 29 C.F.R. §2560-503-1(g)(1)(v)(B), which requires a plan administrator or claims administrator to notify the Plan Participant and/or their beneficiary, "in a manner calculated to be understood by the claimant," "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances," or advising that :such an explanation [of the scientific or clinical judgment for the determination] will be provided upon request.

i. Violated 29 C.F.R. §2560-503-1(h) because they failed to advise the claimant that they were entitled to be provided, upon request and free of charge … all documents records, and other information relevant to the claimant's claim for benefits …" and

j. Violated 29 C.F.R. §2560-503-1(h) (3)(i) because they failed to advise the Plaintiffs that they had one hundred and eighty (180) days following receipt of the notification of an Adverse Benefit Determination to appeal the decision.

k. Moreover, the identical services had been previously billed and paid under the same plan numerous times, and upon information and belief, in certain instances to the same participant.

59. Subsection (b) of the Regulation provides, in pertinent part, that:

> The claims procedures for a plan will be deemed to be reasonable only if …[they] comply with the requirements of paragraphs …(f), [and] (g) …of this section…

60. Although the stated claims procedures of the Aetna Plans may purport to comply with the Regulation's requirements, Aetna's actual Adverse Benefit Determinations   -- and its conduct and claims procedures and practices, as evidenced by the EOBs falsely denying the claims at issue in this litigation –do not comply with these sections of the Regulation and are therefore unreasonable as a matter of law.

61. 29 C.F.R. §2560.503-1(l) provides, in pertinent part:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrate remedies under the plan…

(Emphasis added).

62. In each circumstance in which the Regulations were violated, the administrative remedies on the claims were deemed exhausted, as a matter of law, pursuant to 29 C.F.R. §2560.503(l). In the alternative, any further appeals would have been futile, since Aetna was obviously and repeatedly sending to Plaintiffs phony claim denials and false statements.

63. Based upon Aetna's numerous regulatory violations and failures to exercise discretion, Aetna is divested of any alleged discretionary authority and thus the Court must review the benefit claim *de novo*.

**<u>COUNT ONE</u>**
**(29 U.S.C. §1132(a)(1)(B):**
**To Recover Benefits)**

**64.** Plaintiffs repeat verbatim and incorporate by reference herein Paragraphs 1 - 63 above.

**65.** Between approximately January  and the date of this Complaint, Plaintiffs have provided medically necessary and appropriate chiropractic and medical services to the Aetna Plan Patients on Exhibit A.

**66.** Plaintiffs timely and properly submitted to Aetna all of the claims listed on Exhibit A. All documentation necessary and required, or demanded by Aetna, was timely produced.

**67.** As of this date, Aetna has failed to pay the benefits claims for services Plaintiff rendered to patients listed on Exhibit A for chiropractic and medical services provided from June 2018 through the date of this Complaint Plaintiffs damages are continuing and its claims are in an amount believed to be in excess of $218,000.00.

**68.** Aetna's violations of ERISA Regulations and failure to assert proper and specific grounds for non-payment are a waiver, as a matter of law, of all potential defenses to payment on all the annexed claims. Thus, Plaintiff are entitled to summary judgment on all the claims set forth in Exhibit A.

**69.** Due to the foregoing, Plaintiffs are entitled to judgment in their favor for all outstanding and overdue claims submitted to Aetna, together with interest thereon from the dates that the claims became overdue.

**70.** Due to the foregoing, Plaintiffs are further entitled to a declaration that on all future claims filed by Plaintiffs on behalf of participants or beneficiaries covered under any ERISA-governed medical plan, Plaintiffs are excused from exhaustion of administrative remedies for any claim in which Aetna violated the 30-day rule contained in 29 C.F.R. §2560.503-1.

**71.** Due to the foregoing, Plaintiffs are further entitled to a declaration that on all future claims filed by Plaintiffs on behalf of participants or beneficiaries covered under any ERISA-governed medical plan, Plaintiffs are excused from exhaustion of administrative remedies for any claim in which Aetna violates the specificity requirements contained in 29 C.F.R. §2560.503-1.

**72.** Due to the foregoing, Plaintiffs are further entitled to a declaration that on all future claims filed by Plaintiffs on behalf of participants or beneficiaries covered under any ERISA-governed medical plan, Plaintiffs are excused from exhaustion of administrative remedies for any claim in which Aetna violates the specificity rule as to the reasons for a claim denial, or the specificity rule as to medical necessity denials, as contained in 29 C.F.R. §2560503-1.

## **COUNT TWO**
### **(29 U.S.C. §1132(a)(3) To Enjoin**
### **Aetna's Unlawful Practices)**

**73.** Plaintiffs repeat verbatim and incorporates by reference herein Paragraphs 1 through 72 above.

**74.** 29 U.S.C. §1132(a)(3) provides, on pertinent part:

A civil action may be brought –

(3) by a participant, beneficiary, or fiduciary

A) To enjoin any act or practice which violates any provision of this subchapter….

75. 29 U.S.C. §1140 provides, in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled.

76. Aetna stopped paying claims submitted by Plaintiff beginning in or about June of 2018.

77. In and about the early months of 2018 Aetna flagged Plaintiff's accounts, resulting in the egregious oppressive, labor intensive and unlawful requirement of producing "all pertinent documentation" concerning any and all medical services and procedures, at the time that claims were initially submitted.

78. Aetna's oppressive pre-payment review process is neither provided for nor authorized by ERISA, nor by the Aetna Plans.

79. Upon receipt of Aetna's Adverse Benefit Determinations, plaintiffs were vested with all of the rights and statutory safeguards provided by 29 C.F.R.§2560.503-1, as set forth above, including but not limited to, "[a]ccess to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits." 29 C.F.R.2560.503-1(h)(2)(iii) (emphasis added).

80. A document, records, or other information will be considered "relevant" to a claimant's claim if such document, record or other information:

    a.  Was relief upon in making the benefit determination;

    b.  Was submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relief upon in making the benefit determination;

      c.  Demonstrates compliance with administrative process and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

      d.  In the case of group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. §2560.503-1(M)(8) (i) –(iv) (emphasis added).

81. Plaintiffs in writing, demanded relevant documents concerning the Adverse Benefit Determinations. Defendant repeatedly ignored and refused to comply with Plaintiffs request.

82. Despite providing all information requested by Aetna on every claim submitted for payment, since mid 2018 Aetna has failed and refused to pay all claims submitted

83. Such conduct is in violation of all the safeguards and provisions of 29 C.F.R. §2650,503-1, including but not limited to, the right to be notified of Adverse Benefit Determinations within 30 days, to be advised of the specific reasons for the determinations, to be provided free of charge all relevant documents and materials, to be provided adequate appeal and review process, and to be provided not less than 180 days to submit any such appeal.

84. Such conduct additionally constitutes retaliatory practices specifically proscribed by ERISA.

85. Due to the foregoing, the Court should enjoin Aetna's retaliatory acts pursuant to 29 U.S.C. §1132(a)(3), as illegal and unlawful under ERISA, order that all such acts immediately cease and issue an injunction against such acts in the future.

**Count III. Attorney Fees**

**86.** Plaintiffs repeat verbatim and incorporates by reference herein Paragraphs 1 through 85 above.

87. Plaintiff's demand reasonable attorney's fees for bringing the instant action, along with costs.

88. Plaintiff is entitled to reasonable attorney's fees pursuant to ERISA 502(g)(1), 29 U.S.C. 1132(g)1).

89. In *Hardt v. Reliance Standard Life Ins*. Co., 560 U.S. _____(May 24, 2010, the Supreme Court decided that an ERISA litigant need not be a "prevailing party" to be eligible for an attorney fee.."

90. Under Hardt, a court has discretion to award attorney's fees and costs under 1132(g)(1) as long as the party seeking fees has achieved "some degree of success on the merits."

**<u>DEMAND FOR JURY TRIAL</u>**

91. Plaintiff demands a trial by jury on all issues so triable.

**<u>CONCLUSION</u>**

**WHEREFORE,** Plaintiff's New York Chiropractic and Jamie Bassel demand judgment in their favor and against Defendant Aetna, pursuant to ERISA §502(a)(1) & (a)(3) [29 U.S.C. §1132 (a)(1) & (3)]:

- On the First Cause of Action:

- Judgement in its favor for amounts due and payable on all outstanding and overdue claims submitted to Aetna in an amount to be determined by the Court after trail, but at least the sum of $218,000.00 together with interest therein from the dates that the claims became overdue.

- To a declaration that on all future claims filed by Plaintiff on behalf of beneficiaries covered under any ERISA-governed medical plan, Plaintiffs are excused from exhaustion of administrative remedies for any claim which the claim/benefits administrator violate the 30-day rule contained in 29 C.F.R. §2560.503-1;

- To a declaration that on all future claims filed by Plaintiff on behalf of beneficiaries covered under any ERISA-governed medical plan, Plaintiffs are excused from exhaustion of administrative remedies for any claim which the claim/benefits administrator violated the appeal warning requirements contained in 29 C.F.R. §2560.503-1;

- To a declaration that on all future claims filed by Plaintiff on behalf of beneficiaries covered under any ERISA-governed medical plan, Plaintiffs are excused from exhaustion of administrative remedies for any claim which the claim/benefits administrator violated the specificity requirements contained in 29 C.F.R. §2560.503-1;

- To a declaration that on all future claims filed by Plaintiff on behalf of beneficiaries covered under any ERISA-governed medical plan, Plaintiffs are excused from exhaustion of administrative remedies for any claim which the claim/benefits administrator violated the specificity rule as to

the reasons for a claims denial, or specificity rule as to medical necessity denials as contained in 29 C.F.R. §2560.503-1

- To a declaration that on all future claims filed by Plaintiffs on behalf of beneficiaries covered under any ERISA-governed medical plan, Aetna must pay all claims in full minus any applicable deductibles or co-insurance, if any if the claims administrator(s) violate the 30-day rule contained in 29 C.F.R. §2560.503-1;

- A declaration that because it has achieved "some success on the merits, Aetna must pay to Plaintiffs the ERISA statutory authorized legal fees for this matter;

On the Second Cause of Action

- Pursuant to 29 U.S.C. §1132(a)(3), enjoin Aetna's illegal, unlawful, and retaliatory acts under ERISA;

- Order that all such acts immediately cease; and

- Enjoin all such acts in the future;

On the Third Cause of Action

- Reasonable Attorney Fees;

- Costs of the instant litigation; and

For such other, further and different relief as the Court deems just and Proper.

1

2

Dated:      Brooklyn New York
           October 28, 2020

                                        J. Iandolo Law

3

4

                                   *Jeremy M. Iandolo*

5

6

                                   Jeremy M. Iandolo, Esq.
                                   7621 13th Avenue
                                   Brooklyn New York 11228
7                                        718.305.1702

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28